DUDLEY L. SIMMS, III, JOHN L. SIMMS, DLS FAMILY INVESTMENT PARTNERSHIP, AND JLS FAMILY INVESTMENT PARTNERSHIP, PLAINTIFFS v. PRUDENTIAL LIFE INSURANCE COMPANY OF AMERICA AND LARRY G. FRAZIER, DEFENDANTS

No. COA99-1130

(Filed 7 November 2000)

## Fraud— negligent misrepresentation—failure to state a claim

The trial court did not err by granting a Rule 12(b)(6) dismissal for defendants in an action for negligent misrepresentation arising from plaintiffs becoming creditors of a company emerging from bankruptcy by purchasing the claims of third party creditors and receiving stock in the new company. Plaintiffs do not allege that defendants had a duty of care to them to be certain the information they were giving plaintiffs was complete or accurate and plaintiffs should have been put on notice by the language used that whether the revitalized entity would be profitable remained a risk. Although plaintiffs alleged that the information was supplied in the course of defendant Frazier's business, profession, or employment, plaintiffs allege nothing that would bring a reasonable mind to believe that Frazier or the company he then worked for was in the business of giving financial advice and did not allege that Frazier had or gained a pecuniary interest from plaintiffs' investments. Finally, plaintiffs did not allege that defendant Prudential provided them any information or owed them any duty; and it is not possible to hold

Prudential liable under respondeat superior for Frazier's actions since plaintiff failed to state a claim as to Frazier.

Appeal by plaintiffs from orders entered 16 June 1999 by Judge William H. Freeman in Forsyth County Superior Court. Heard in the Court of Appeals 16 August 2000.

*Smith, James, Rowlett & Cohen, LLP, by Seth R. Cohen, for plaintiff-appellants.*

*Smith Helms Mulliss & Moore, L.L.P., by Benjamin F. Davis, Jr. and Shannon R. Joseph; Weil, Gotshal & Manges, LLP, by Greg A. Danilow, for defendant-appellee Prudential Insurance Company of America.*

*F. Kevin Mauney for defendant-appellee Larry G. Frazier.*

HUNTER, Judge.

Plaintiff-appellants Dudley L. Simms, III, John L. Simms, DLS Family Investment Partnership, and JLS Family Investment Partnership (collectively "plaintiffs") appeal the trial court's orders of 16 June 1999, allowing defendants' Prudential Life Insurance Company of America and Larry G. Frazier (collectively "defendants") motion to dismiss, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). We agree that plaintiffs have failed to state a claim upon which relief may be granted and, therefore, affirm the trial court's rulings.

The factual basis out of which this appeal arises began in April 1993 when Piece Goods Shop Company, L.P. ("Piece Goods"), of which Prudential was the principal creditor, filed for bankruptcy. More than two years later on 16 October 1995, Piece Goods was reorganized and renamed Silas Creek Retail Company, Inc. ("Silas Creek"). However in August 1995, before reorganization was completed, defendant Frazier (who at the time was president and chief operating officer of Piece Goods) informed Dudley Simms that "the equity value of the entity emerging from bankruptcy reorganization would be in excess of $31 million dollars, and that it would be in a debt free position except for a $9 million dollar line of credit and current trade debts." Dudley Simms conveyed this information to John Simms, DLS and JLS and, on 2 October 1995 (before reorganization was completed), plaintiffs "chose to become creditors [of Piece Goods], by purchasing claims from one or more [of Piece Goods'] general unsecured creditors . . . ." This first purchase of claims, made

by Dudley Simms and DLS, was for an investment of $1,650,000.00, which was later exchanged for 138,637 shares of stock in Silas Creek. (The debt reorganization plan allowed for "the issuance to General Unsecured Creditors [by the soon-to-be reorganized company] of one (1) share of New Common Stock for each $100.00 of each such Creditor's Allowed Claim.") However, we note that there is no allegation by plaintiffs—nor is there any evidence of record—that (at the time defendants conveyed and plaintiffs acted upon the information) defendants received any consideration or pecuniary gain from plaintiffs' (Dudley Simms and DLS) purchasing the claims of third-party unsecured creditors during the bankruptcy proceedings. On 20 November 1995 (after reorganization was completed), John Simms and JLS invested $567,321.33 in exchange for 47,277 shares of stock in Silas Creek. Again we note that there is no allegation by plaintiffs—or evidence of record—that defendants received any direct consideration or pecuniary gain from this investment by plaintiffs (John Simms and JLS) in the newly reorganized company.

On 15 March 1996, Silas Creek acquired Northwest Fabrics and Craft stores at a cost of $35 million, by incurring the cost as debt to its principal lender. Then in August 1996, it .was found that Silas Creek had an inventory shortage in excess of $8 million. Between the acquisition of Northwest Fabrics and the inventory loss, "irreparable harm [was caused] to Silas Creek . . . from which th[e] entity was unable to recover. . . . [Thus,] [p]laintiffs lost the entirety of their investments in Silas Creek . . . ."

On 29 July 1998, plaintiffs filed their complaint against defendants alleging: (1) that Frazier was at all times acting as an agent and servant of Prudential; (2) that Frazier negligently misrepresented the financial status of Piece Goods by failing to advise Dudley Simms that (a) "the entity emerging from bankruptcy was actively considering the acquisition of . . . Northwest Fabrics[,]" and (b) "the equity value [of the emerging company] was overstated by the amount of at least $8 million representing an actual shortage of physical inventory not reflected on the financial records"; (3) that Prudential, which "owned in excess of 60% of [Silas Creek,]" made Frazier president and chief operating officer of Silas Creek, and therefore Frazier was acting on behalf of Prudential by gaining plaintiffs as investors; (4) that defendants failed to exercise reasonable care in obtaining and communicating the information to plaintiffs; (5) that defendants intended that plaintiffs rely on the information given them by Frazier; and (6) that plaintiffs did reasonably and justifiably rely on the information sup-

plied by Frazier, to their severe detriment. In response, defendants filed a motion with the court to dismiss with prejudice pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, which motion the court allowed.

Plaintiffs bring forth two assignments of error which we combine, the issue being whether the trial court committed reversible error by granting defendants' 12(b)(6) motions. We hold that it did not.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). This Court has summarized the trial court's duty in ruling upon such a motion as follows:

"*In order to withstand [a 12(b)(6) motion], the complaint must provide sufficient notice of the events and circumstances from which the claim arises, and must state allegations sufficient to satisfy the substantive elements of at least some recognized claim.* The question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. In general, 'a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*' "

*Werner v. Alexander*, 130 N.C. App. 435, 437-38, 502 S.E.2d 897, 899-900 (1998) (emphasis added and emphasis in original) (quoting *Harris v. NCNB*, 85 N.C. App. at 670-71, 355 S.E.2d at 840 (citations omitted)). Thus, in the case at bar, where plaintiffs' claim is one of negligent misrepresentation, plaintiffs' complaint must have addressed each of the necessary elements of that claim.

It has long been held in North Carolina that

The tort of negligent misrepresentation occurs when [(1)] a party justifiably relies [(2)] to his detriment [(3)] on information prepared without reasonable care [(4)] by one who owed the relying party a duty of care.

*Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988), *reversed on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991). Therefore, to withstand defendants'

**SIMMS v. PRUDENTIAL LIFE INS. CO. OF AM.**

[140 N.C. App. 529 (2000)]

motion to dismiss, plaintiffs at bar must be able to show that they *justifiably* relied—to their detriment—on the information provided them by defendants and that defendants owed plaintiffs a duty of care to be certain that the information provided was complete and accurate.

In their complaint, plaintiffs allege "Frazier made plaintiffs aware that Piece Goods . . . *could* emerge from bankruptcy reorganization as a new revitalized entity and that investment in the equity of the new revitalized entity *should be* extremely valuable and profitable." (Emphasis added.) Our courts have said that "[w]here 'the purchaser has full opportunity to make pertinent inquiries but fails to do so through no artifice or inducement of the seller, an action in [negligent misrepresentation] will not lie.'" *C.F.R. Foods, Inc. v. Randolph Development Co.*, 107 N.C. App. 584, 589, 421 S.E.2d 386, 389 (1992) (quoting *Libby Hill Seafood Restaurants, Inc. v. Owens*, 62 N.C. App. 695, 698, 303 S.E.2d 565, 568, *review denied*, 309 N.C. 321, 307 S.E.2d 164 (1983)). The record is clear and plaintiffs freely admit that although Frazier conveyed the information to Dudley Simms in August 1995, plaintiffs did not make their first investment until October 1995 and their second investment until late November 1995. Yet plaintiffs offer no evidence, and there is none in the record, to show that they did not have "full opportunity to make pertinent inquiries" as to the factual accuracy of Frazier's statements to them upon which they claim to have based their decision to invest. *Id.* We note that by the plain language admittedly used by Frazier, plaintiffs should have been put on notice that the fact of whether the revitalized entity would be profitable remained a risk. The fact that plaintiffs took the risk by acting on this "hot tip" and it did not turn out to be profitable is unfortunate; however, we recognize it is often the result of a high risk investment.

Nevertheless, plaintiffs proceed to state specific things told to them and also withheld from them by Frazier, things which plaintiffs allege were misrepresentations of the true state of Piece Goods and its successor, Silas Creek. Plaintiffs further allege that it is upon these statements by Frazier (or the lack thereof) that they justifiably relied to their detriment. (It is undisputed that plaintiffs suffered injury—by way of their losing almost $2 million invested in Piece Goods and Silas Creek. However, Prudential also lost its investment when Silas Creek went bankrupt.) Yet, the record reflects that *at no time and in no way do plaintiffs allege that defendants had a duty of care to them, a duty which required that they be certain the information*

*they were giving plaintiffs was complete or accurate.* Without an allegation that defendants owed plaintiffs a duty of care regarding the information given, plaintiffs' claim must necessarily fail. *Id.* See also *Energy Investors Fund, L.P. v. Metric Constructors, Inc.,* 351 N.C. 331, 337-38, 525 S.E.2d 441, 445 (2000); *Holshouser v. Shaner Hotel Grp. Props. One,* 134 N.C. App. 391, 394, 518 S.E.2d 17, 21 (1999), *aff'd* 351 N.C. 330, 524 S.E.2d 568 (2000); and, *Hoisington v. ZT-Winston-Salem Assocs.,* 133 N.C. App. 485, 488, 516 S.E.2d 176, 179 (1999).

Plaintiffs' complaint alleged that:

Defendants supplied the . . . information to plaintiffs in the course of defendants' business, in transactions in which both plaintiffs and defendants had financial interest.

Defendants intended that plaintiffs rely on the information supplied by them for guidance in particular financial transactions, that is, the acquisition of stock in the entity emerging from bankruptcy.

Plaintiffs contend they have met their burden of showing a duty of care. We disagree. It is true that our Supreme Court has defined a breach of the duty owed in negligent misrepresentation as:

". . . One who, *in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest,* supplies false information for the guidance of others in their business transactions, [and thus] is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP,* 350 N.C. 214, 218, 513 S.E.2d 320, 323-24 (1999) (emphasis added) (quoting Restatement (Second) of Torts § 552 (1977)). However, aside from plaintiffs' allegation that Frazier supplied the information in the course of his business, profession or employment, plaintiffs allege nothing that would bring a reasonable mind to believe that either he or Piece Goods (the company for which he worked at the time the information was given) was in the business of giving financial advice. Furthermore, the record reflects that *at no time and in no way do plaintiffs allege that Frazier had a pecuniary interest or obtained any pecuniary gain from plaintiffs' investments or transactions.*

Thus, again, plaintiffs have failed to meet their burden of showing a duty of care owed them by Frazier, and their claim against him for negligent misrepresentation must necessarily fail. *Id.* We then hold that the trial court's grant of Frazier's 12(b)(6) motion was proper.

We further note that plaintiffs' complaint, on its face, has no allegation that Prudential provided them any information at all. Neither do plaintiffs allege Prudential owed them a duty of care. In fact, the only link plaintiffs make between Prudential and the misrepresentation is that "[a]t all material times defendant Larry G. Frazier acted as an agent and servant of defendant Prudential . . . and his conduct which is the subject of this action was within the course and scope of this agency and employment." Therefore, because plaintiffs attempt to reach Prudential through an employer/employee or principal/agent relationship with Frazier under a theory of *respondeat superior*, plaintiffs' claim against Prudential must also necessarily fail. *Long v. Giles*, 123 N.C. App. 150, 152, 472 S.E.2d 374, 375 (1996). Our courts have long held that:

> A finding of liability against defendant . . . employer, is only possible if [the employee] is found liable, and the injuries arose out of and in the course of his [or her] employment [with defendant employer]. In other words, defendant [employer's] liability is derivative of [its employee's] liability, and the primary claim against the [employee] must first be determined before any claim against [defendant employer] is possible. . . .
>
> If plaintiffs do not recover against [the employee], they cannot seek to recover against defendant [employer] under a *respondeat superior* theory . . . .

*Id.* See also *McLain v. Taco Bell Corp*, 137 N.C. App. 179, 191, 527 S.E.2d 712, 720-21 (2000); *Wrenn v. Maria Parham Hosp., Inc.*, 135 N.C. App. 672, 679, 522 S.E.2d 789, 793 (1999); and, *Watson v. Dixon*, 132 N.C. App. 329, 332, 511 S.E.2d 37, 39 (1999), *aff'd* 352 N.C. 343, 532 S.E.2d 175 (2000).

Since we have already held that plaintiffs have failed to state a claim for which relief may be granted as to Frazier, it is not possible then that we could hold otherwise as to plaintiffs' claim that Prudential, as Frazier's employer or principal, is liable under a theory of *respondeat superior*. *Id.* Thus, we hold that the trial court's grant of Prudential's motion to dismiss was also proper.

Affirmed.

Judges LEWIS and WALKER concur.