ELMORE, Judge.
 

 *155
 
 Wilton Gene Rountree (plaintiff), a former tax administrator, retired from his employment with Nash County before accepting a new position with Chowan County (defendant) on a limited basis. After working for nearly two years, plaintiff learned that the terms of his employment with defendant had rendered him ineligible to receive retirement benefits. He resigned and sued defendant for breach of contract and negligent misrepresentation. The trial court granted summary judgment for defendant on both claims.
 

 Plaintiff appeals, arguing that the trial court erred in granting summary judgment on his negligent misrepresentation claim. Upon review, we hold that summary judgment for defendant was proper because (1) plaintiff failed to forecast evidence which, taken as true, would establish
 
 *156
 
 that defendant owed plaintiff a duty of care apart from defendant's purported contractual obligation; and (2) assuming the existence of a separate legal duty, plaintiff failed to produce evidence tending to show that his reliance was justifiable. Affirmed.
 

 I. Background
 

 In 2009, defendant was experiencing financial difficulties. It had been forced to increase taxes twice in the preceding year to fund its operations and, to make matters worse, its
 
 *829
 
 longtime tax administrator resigned unexpectedly. Plaintiff was referred to Peter Rascoe, the Chowan County manager, as a potential replacement. Plaintiff had served as a tax administrator, first in Edgecombe County and then Nash County, before his retirement in February 2009. Impressed with plaintiff's experience and reputation, Rascoe contacted plaintiff to discuss the position.
 

 As a retiree, plaintiff was receiving benefits through the Local Government Employees' Retirement System (LGERS). During his initial meeting with Rascoe, plaintiff expressed interest in the tax administrator position but made clear that he wanted to protect his retirement benefits. After their meeting, Rascoe sent plaintiff an offer letter describing the terms of the proposed employment agreement. The letter provided in part:
 

 As a retiree realizing benefits from the local government retirement system and health insurance benefits from your former employer, you have expressed interest in the position on a contract basis. I am prepared to offer you such an arrangement along the parameters we discussed. As such, the position if accepted by you, would be an "at will" contract relationship. I am prepared to offer such an arrangement to you for at least a term of twenty-four months with the hope that it may continue for a longer period if both parties are in agreement.
 

 On the more specific conditions, the letter stipulated that plaintiff would receive an annual salary of $46,800.00, or $30.00 per hour based on the number of actual hours worked per week, with a target of a thirty-hour work week. Defendant would not withhold retirement contributions, as plaintiff was already receiving those benefits.
 

 Rascoe, an attorney, knew the state had employment restrictions in place for its retirees which, if not observed, could disqualify them from their retirement benefits. During his deposition, Rascoe explained that he
 
 *157
 
 was acting in defendant's interest when he drafted the letter although he tried to address plaintiff's concerns. He did not represent or guarantee that plaintiff's benefits would be safe under the proposed terms of employment but he did believe that plaintiff would find them suitable. Rascoe testified: "It was my understanding that we had presented him ... with an arrangement that he could agree to that he would have-he could make the determination whether or not it affected his retirement ..., but it was our understanding ... of the system that this did that. We thought."
 

 Plaintiff himself was also familiar with LGERS. When he prepared to retire from his position in Nash County, he had consulted the State Employee Retirement Handbook, which contained the benefits eligibility requirements, to determine the amount of money he could expect to receive in retirement. He acknowledged during his deposition that he would have been responsible for maintaining his own benefits eligibility. According to plaintiff's testimony and affidavit, however, Rascoe "assured" him that the employment contract would protect his benefits. Beyond his conversations with Rascoe, plaintiff performed no due diligence to confirm whether defendant's proposed terms of employment would affect his benefits.
 

 Plaintiff eventually accepted the position under the terms set forth in the offer letter. He worked as the tax administrator without incident for nearly two years until 1 August 2011, when he received a written notice from the North Carolina Retirement Systems Division. The notice informed plaintiff that, based on his employment agreement, he had returned to "regular employment" on 1 August 2009 and his compensation since then was subject to retirement contributions, which had not been made. In addition, because the Division had not been informed of plaintiff's "return to service," he had received $114,448.32 in monthly retirement benefits to which he was not entitled as an "employee" under LGERS. Plaintiff resigned the following day.
 

 Beginning in September 2011, the Division began deducting $1,000.00 each month from plaintiff's retirement benefits to repay the $114,448.32 which he had received over the past two years. Defendant later provided counsel to plaintiff, and plaintiff entered into a settlement agreement with the Division to repay $30,000.00 of the $114.448.32 in wrongful distributions. Of the $30,000.00 which
 
 *830
 
 plaintiff agreed to repay, $11,000.00 had already been satisfied through monthly deductions, leaving $19,000.00 to be paid in the same manner.
 

 On 29 April 2013, plaintiff filed a complaint against defendant alleging breach of contract and negligent misrepresentation. Defendant
 
 *158
 
 answered and moved for summary judgment on each of plaintiff's claims, which the trial court granted. Plaintiff timely appeals.
 

 II. Discussion
 

 On appeal, plaintiff does not challenge the trial court's ruling on his breach of contract claim. He argues instead that the court erred in granting summary judgment on his negligent misrepresentation claim because he demonstrated genuine issues of material fact for trial. Defendant maintains that the trial court's grant of summary judgment was proper for two reasons: first, plaintiff's claim for negligent misrepresentation is barred by the economic loss rule because it impermissibly arises out of the same alleged contractual duty as his original breach of contract claim; and second, plaintiff failed to establish the essential elements of negligent misrepresentation-specifically, a duty of care, justifiable reliance, and detrimental reliance.
 

 "Our standard of review of an appeal from summary judgment is de novo."
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008). Such judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015). The movant has "the burden of establishing the lack of any triable issue."
 
 Lord v. Beerman
 
 ,
 
 191 N.C.App. 290
 
 , 293,
 
 664 S.E.2d 331
 
 , 334 (2008) (citing
 
 Roumillat v. Simplistic Enters., Inc.
 
 ,
 
 331 N.C. 57
 
 , 62-63,
 
 414 S.E.2d 339
 
 , 341-42 (1992) ). The movant may satisfy its burden " 'by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim.' "
 

 Id.
 

 (quoting
 
 Collingwood v. G.E. Real Estate Equities,
 

 324 N.C. 63
 
 , 66,
 
 376 S.E.2d 425
 
 , 427 (1989) );
 
 see also
 

 Ussery v. Branch Banking & Trust Co.
 
 ,
 
 368 N.C. 325
 
 , 335,
 
 777 S.E.2d 272
 
 , 279 (2015) ("When the proof offered by either party establishes that no cause of action or defense exists, summary judgment may be granted." (citation omitted)). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party."
 
 Dalton v. Camp
 
 ,
 
 353 N.C. 647
 
 , 651,
 
 548 S.E.2d 704
 
 , 707 (2001) (citation omitted).
 

 "The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care."
 

 *159
 

 Raritan River Steel Co. v. Cherry, Bekaert & Holland
 
 ,
 
 322 N.C. 200
 
 , 206,
 
 367 S.E.2d 609
 
 , 612 (1988) (citations omitted);
 
 see also
 

 id.
 
 at 203, 214,
 
 367 S.E.2d at 611, 617
 
 (adopting the approach to negligent misrepresentation set forth in Restatement (Second) of Torts § 552 (1977) );
 
 Simms v. Prudential Life Ins. Co. of Am.
 
 ,
 
 140 N.C.App. 529
 
 , 532,
 
 537 S.E.2d 237
 
 , 240 (2000) (articulating elements of negligent misrepresentation).
 

 The parties first disagree as to whether the economic loss rule bars plaintiff's negligent misrepresentation claim. The economic loss rule, as it has developed in North Carolina, generally bars recovery in tort for damages arising out of a breach of contract:
 

 A tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract. It is the law of contract and not the law of negligence which defines the obligations and remedies of the parties in such a situation.
 

 Lord v. Customized Consulting Specialty, Inc.
 
 ,
 
 182 N.C.App. 635
 
 , 639,
 
 643 S.E.2d 28
 
 , 30-31 (2007) (alteration omitted) (citations omitted);
 
 see also
 

 N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.
 
 ,
 
 294 N.C. 73
 
 , 81-82,
 
 240 S.E.2d 345
 
 , 350-51 (1978) (explaining that absent four enumerated exceptions, "a
 
 *831
 
 breach of contract does not give rise to a tort action by the promisee against the promisor"),
 
 rejected in part on other grounds by
 

 Trs. of Rowan Technical Coll. v. J. Hyatt Hammond Assocs., Inc.
 
 ,
 
 313 N.C. 230
 
 , 241-43,
 
 328 S.E.2d 274
 
 , 289-82 (1985).
 

 Plaintiff alleged in his complaint that defendant breached the employment agreement which, according to plaintiff, "required Defendant to provide employment terms that would not limit, abridge, or diminish Plaintiff's right to receive Retirement Benefits from LGERS." If this condition was part of the agreement, as plaintiff initially pleaded, then his tort claim would fail as a matter of law because "a breach of contract does not give rise to a tort action."
 
 N.C. State Ports Auth.
 
 ,
 
 294 N.C. at 81
 
 ,
 
 240 S.E.2d at 350
 
 . In support of his tort claim, however, plaintiff pleaded in the alternative that a misrepresentation occurred prior to the execution of the agreement for the purpose of inducing plaintiff to enter into a contract: "Defendant ... represented to Plaintiff that it was offering employment terms that would not violate his eligibility for retirement benefits through LGERS," and "Defendant, hoping to induce Plaintiff into employment, intended for him to rely upon the aforesaid representation regarding continued eligibility for retirement benefits." Defendant
 
 *160
 
 argues that plaintiff's tort claim is "merely a restatement of his failed contract claim disguised as a distinct cause of action." But if the evidence otherwise showed that defendant had no contractual obligation to protect plaintiff's retirement benefits, then plaintiff's tort claim, construed liberally, would not be barred by the economic loss rule.
 

 Even so, a viable tort action "must be grounded on a violation of a
 
 duty
 
 imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties."
 
 Asheville Contracting Co. v. City of Wilson
 
 ,
 
 62 N.C.App. 329
 
 , 342,
 
 303 S.E.2d 365
 
 , 373 (1983) (emphasis added) (citation omitted). "When there is no dispute as to the facts or when only a single inference can be drawn from the evidence, the issue of whether a duty exists is a question of law for the court."
 
 Mozingo v. Pitt Cnty. Mem'l Hosp., Inc.
 
 ,
 
 101 N.C.App. 578
 
 , 588,
 
 400 S.E.2d 747
 
 , 753 (1991) (citations omitted),
 
 aff'd
 
 ,
 
 331 N.C. 182
 
 ,
 
 415 S.E.2d 341
 
 (1992).
 

 A breach of duty that gives rise to a claim of negligent misrepresentation has been defined as:
 

 One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, [and thus] is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
 

 Simms
 
 ,
 
 140 N.C.App. at 534
 
 ,
 
 537 S.E.2d at 241
 
 (alteration in original) (emphasis omitted) (quoting
 
 Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP
 
 ,
 
 350 N.C. 214
 
 , 218,
 
 513 S.E.2d 320
 
 , 323-24 (1999) ) (internal quotation marks omitted).
 

 Such a duty commonly arises within professional relationships.
 
 See, e.g.
 
 ,
 
 Ballance v. Rinehart
 
 ,
 
 105 N.C.App. 203
 
 , 207-08,
 
 412 S.E.2d 106
 
 , 109 (1992) (real estate appraisers);
 
 Stanford v. Owens
 
 ,
 
 46 N.C.App. 388
 
 , 400,
 
 265 S.E.2d 617
 
 , 625 (1980) (engineers);
 
 Shoffner Indus., Inc. v. W.B. Lloyd Constr. Co.
 
 ,
 
 42 N.C.App. 259
 
 , 271-72,
 
 257 S.E.2d 50
 
 , 59 (1979) (architects). In
 
 Raritan River Steel
 
 , for example, two plaintiff-corporations claimed to have extended credit to Intercontinental Metals Corporation (IMC) based upon an audit report of IMC's financial status.
 
 322 N.C. at 203
 
 ,
 
 367 S.E.2d at 611
 
 . IMC had retained a firm of certified public accountants to prepare the report.
 

 Id.
 

 When IMC defaulted, the plaintiffs sued the accounting firm for negligent misrepresentation,
 
 *161
 
 alleging that plaintiffs "incurred damages when they extended credit to IMC in reliance on incorrect information contained in an audit report on IMC's financial status prepared for IMC by defendants."
 

 Id.
 

 As to whether the accounting firm owed a duty of care to the plaintiffs, the Supreme Court explained:
 

 As we understand it, under the Restatement approach an accountant who audits or prepares financial information for a
 
 *832
 
 client owes a duty of care not only to the client but to any other person, or one of a group of persons, whom the accountant or his client intends the information to benefit; and that person reasonably relies on the information in a transaction, or one substantially similar to it, that the accountant or his client intends the information to influence.
 

 Id.
 
 at 210,
 
 367 S.E.2d at
 
 614 ;
 
 see also
 
 Restatement (Second) of Torts § 552 cmt. e (1977) ("When the information [supplied] concerns a fact not known to the recipient, he is entitled to expect that the supplier will exercise that care and competence in its ascertainment which the supplier's business or profession requires and which, therefore, the supplier professes to have by engaging in it.").
 

 We have also recognized, albeit in a more limited context, that a separate duty of care may arise between adversaries in a commercial transaction. In
 
 Kindred of North Carolina, Inc. v. Bond
 
 ,
 
 160 N.C.App. 90
 
 ,
 
 584 S.E.2d 846
 
 (2003), the buyer sued the seller for negligent misrepresentation in connection with the purchase of a closely-held business.
 
 Id.
 
 at 92-95,
 
 584 S.E.2d at 848-49
 
 . After entering into a purchase agreement, the buyer discovered that the seller had provided inaccurate financial information about the company.
 
 Id.
 
 at 93-95,
 
 584 S.E.2d at 848-49
 
 . This Court held that the seller owed a duty to the buyer during the course of negotiations "to provide accurate, or at least negligence-free financial information" about the company because the seller "
 
 was the only party who had or controlled the information at issue
 
 " and the buyer "
 
 had no ability to perform any independent investigation
 
 ."
 
 Id.
 
 at 101,
 
 584 S.E.2d at 853
 
 (emphasis added) (citing
 
 Libby Hill Seafood Rests., Inc. v.
 

 Owens
 
 ,
 
 62 N.C.App. 695
 
 , 698,
 
 303 S.E.2d 565
 
 , 568 (1983) ("[W]here material facts are available to the vendor alone, he or she
 
 must
 
 disclose them.")).
 

 Unlike the buyer in
 
 Kindred
 
 , however, here plaintiff has failed to establish a viable tort action based on a violation of a duty of care. The dispute arose out of a potentially adversarial arm's-length negotiation
 
 *162
 
 between an employer and prospective employee. Defendant did not have exclusive access or control over the benefits eligibility information, which was publicly available and readily accessible. In addition, plaintiff had an equal opportunity to perform his own investigation to determine whether the proposed terms of employment were suitable. In the course of their discussions, therefore, defendant had no legal duty to provide accurate information regarding plaintiff's continued benefits eligibility.
 

 Even assuming that defendant owed to plaintiff a duty of care, plaintiff's negligent misrepresentation claim fails for another reason. Specifically, plaintiff failed to produce evidence tending to show that he made a reasonable inquiry into Rascoe's representations, that he was denied the opportunity to investigate, or that he could not have learned the true facts through reasonable diligence. While normally a question for the jury, the only conclusion that can be drawn from the evidence is that plaintiff's reliance was not justifiable.
 
 See
 

 Dallaire v. Bank of Am., N.A.
 
 ,
 
 367 N.C. 363
 
 , 369,
 
 760 S.E.2d 263
 
 , 267 (2014) ("Whether a party's reliance is justified is generally a question for the jury, except in instances in which 'the facts are so clear as to permit only one conclusion.' " (quoting
 
 Marcus Bros. Textiles, Inc.
 
 ,
 
 350 N.C. at 225
 
 ,
 
 513 S.E.2d at
 
 327 )).
 

 Plaintiff maintains that, according to
 
 Walker v. Town of Stoneville
 
 ,
 
 211 N.C.App. 24
 
 ,
 
 712 S.E.2d 239
 
 (2011), he was under no obligation to undertake his own investigation into the accuracy of defendant's representations. In that case, the defendant Town of Stoneville argued that Walker had a "duty to investigate" the Town's representations, and because Walker "failed to show he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence," the evidence was insufficient to establish reasonable reliance.
 
 Id.
 
 at 34,
 
 712 S.E.2d at 246
 
 . Rejecting the Town's contention, this Court first explained that " 'a man is not expected to deal with another as if he is a knave, and certainly not unless there is something to excite his suspicion.' "
 

 Id.
 

 (quoting
 
 White Sewing Mach. Co. v. Bullock
 
 ,
 
 161 N.C. 1
 
 , 8,
 
 76 S.E. 634
 
 , 637 (1912) ). In addition, the
 
 *833
 
 evidence showed that "[Walker] and the Town were not on equal footing," and there was nothing in the Town's representations "that would put a person of ordinary prudence upon inquiry."
 
 Id.
 
 at 34,
 
 712 S.E.2d at 246-47
 
 . Because "the evidence was sufficient to show that [Walker] could not have learned the true facts by exercise of reasonable diligence," the Court did not specifically address whether Walker "was
 
 required
 
 to show that he was denied the opportunity to investigate, or that he could not have learned the true facts by exercise of reasonable diligence."
 
 Id.
 
 at 35,
 
 712 S.E.2d at 247
 
 .
 
 *163
 
 At least two Supreme Court cases decided since
 
 Walker
 
 support defendant's argument that plaintiff was required to show more to establish justifiable reliance. In
 
 Dallaire
 
 , the Court held that "a borrower cannot establish a claim for negligent misrepresentation based on a loan officer's statements about lien priority if the borrower fails to make reasonable inquiry into the validity of those statements."
 
 367 N.C. at 364
 
 ,
 
 760 S.E.2d at 264
 
 . Because the borrowers offered no evidence that they inquired, or were prevented from inquiring, into the accuracy the loan officer's statements, the Court affirmed summary judgment for the lender on the borrower's negligent misrepresentation claim.
 

 Id.
 

 at 369-70
 
 ,
 
 760 S.E.2d at
 
 267-68 ;
 
 see also
 

 Pinney v. State Farm Mut. Ins. Co.
 
 ,
 
 146 N.C.App. 248
 
 , 256,
 
 552 S.E.2d 186
 
 , 192 (2001) ("[W]hen a party relying on a 'misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence.' " (citation omitted)),
 
 disc. review denied
 
 ,
 
 356 N.C. 438
 
 ,
 
 572 S.E.2d 788
 
 (2002).
 

 Similarly, in
 
 Arnesen v. Rivers Edge Golf Club & Plantation, Inc.
 
 ,
 
 368 N.C. 440
 
 ,
 
 781 S.E.2d 1
 
 (2015), the Court relied on
 
 Dallaire
 
 to affirm the dismissal of the plaintiffs' negligent misrepresentation claim pursuant to Rule 12(b)(6).
 
 Id.
 
 at 451-52,
 
 781 S.E.2d at 9-10
 
 . The Court explained: "Reliance is not reasonable if a plaintiff fails to make any independent investigation or fails to demonstrate he was prevented from doing so."
 
 Id.
 
 at 449,
 
 781 S.E.2d at 8
 
 (citations omitted) (internal quotation marks omitted). Rather, "to establish justifiable reliance a plaintiff must sufficiently allege that he made a reasonable inquiry into the misrepresentation and allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence."
 
 Id.
 
 at 454,
 
 781 S.E.2d at 11
 
 (citations omitted) (internal quotation marks omitted). Because the plaintiffs did "not allege that they inquired, or were prevented from inquiring," into certain appraisal information, they failed to establish justifiable reliance.
 
 Id.
 
 at 451,
 
 781 S.E.2d at
 
 9 (citing
 
 Dallaire
 
 ,
 
 367 N.C. at 370
 
 ,
 
 760 S.E.2d at
 
 268 );
 
 see also
 

 Fazzari v. Infinity Partners, LLC
 
 ,
 
 235 N.C.App. 233
 
 , 241,
 
 762 S.E.2d 237
 
 , 242 (2014) (affirming summary judgment for the defendant-lender where the plaintiffs failed to forecast evidence that they conducted an independent inquiry into the value of lots in planned subdivision or were prevented from doing so).
 

 In this case, plaintiff failed to produce any evidence-or allege in his complaint-that he made a reasonable inquiry into Rascoe's representations, that he was denied the opportunity to investigate, or that
 
 *164
 
 he could not have learned the true facts through reasonable diligence. On the contrary, defendant directs our attention to plaintiff's deposition testimony in which plaintiff stated that he was familiar with LGERS and was aware that the rules governing his benefits were available in the State Employee Retirement Handbook. Plaintiff also confirmed that his understanding of his benefits eligibility was based purely on his review of the handbook, and that he even consulted the handbook for other benefits information as he prepared to retire from Nash County. And while he acknowledged his own responsibility for maintaining his personal retirement benefits, he did not consult with anyone else regarding his eligibility requirements before accepting the position with defendant. In the absence of any evidence tending to show justifiable reliance, the trial court properly granted summary judgment in favor of defendant.
 

 III. Conclusion
 

 Because defendant met its burden by proving the absence of a separate duty of care
 
 *834
 
 and justifiable reliance, we affirm the trial court's order granting summary judgment for defendant on plaintiff's negligent misrepresentation claim.
 

 AFFIRMED.
 

 Judges HUNTER, JR. and DILLON concur.