Herrera v. Charlotte School of Law, LLC, 2018 NCBC 34.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br>MECKLENBURG COUNTY | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>17 CVS 1965 [MASTER FILE]<br>17 CVS 4265; 17 CVS 5870;<br>17 CVS 6749; 17 CVS 7851 |
| DANIEL HERRERA; TALECE HUNTER; ARIQUE DROSS, III; STACEY KING; DAWN PATTERSON; WILL HODGE; JOELLE BATTAGLIA; PORTIA DARBY HAWKINS; JAMES HOWE; JULES DOSSOU AZATASSOU; MAURICE RUSSELL; KIMBERLY JOHNSON; JENNIFER POLSKY; and TARAH FRIEDMAN,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLOTTE SCHOOL OF LAW, LLC; INFILAW CORPORATION; INFILAW HOLDING, LLC; JAY CONISON; CHIDI OGENE; DONALD E. LIVELY; and RICK INATOME,<br><br>Defendants. | **ORDER & OPINION ON DEFENDANTS' MOTION TO DISMISS** |

1.     THIS MATTER is before the Court on Charlotte School of Law, LLC ("CSL"), InfiLaw Holding, LLC, InfiLaw Corporation, Jay Conison, Chidi Ogene, Donald E. Lively, and Rick Inatome's (collectively, the "CSL Defendants") Motion to Dismiss for Failure to State A Claim (the "Motion") filed in: *Herrera v. Charlotte School of Law, LLC*, 17 CVS 1965 (the "Herrera Action"); *Robertson v. Charlotte School of Law, LLC*, 17 CVS 4265 (the "Robertson Action"); *Mosley v. Charlotte School of Law, LLC*, 17 CVS 5870 (the "Mosley Action"); *Merritt v. Charlotte School of Law, LLC*, 17 CVS 6749 (the "Merritt Action"); and *Frisby v. Charlotte School of Law, LLC*,

17 CVS 7851 (the "Frisby Action"), (collectively the "Actions"). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

*Law Offices of James Scott Farrin, by Gary W. Jackson, Hoyt G. Tessener, James S. Farrin, Christopher R. Bagley, Sidney B. Fligel, and The Law Offices of Jason E. Taylor, P.C., by Lawrence Serbin, for Plaintiffs.*

*Womble Bond Dickinson (US) LLP, by Debbie W. Harden, Johnny M. Loper, and Sarah M. Stone, and Cooley LLP, by David E. Mills (pro hac vice) and Michael D. Hays (pro hac vice), for Defendants Charlotte School of Law, LLC, InfiLaw Corporation, InfiLaw Holding, LLC, Jay Conison, Chidi Ogene, Donald E. Lively, and Rick Inatome.*

Gale, Chief Judge.

## I.   THE PARTIES

### A.   Plaintiffs

2.   Plaintiffs Daniel Herrera, Talece Hunter, Arique Dross, III, Stacey King, Dawn Patterson, Will Hodge, Joelle Battaglia, Portia Darby Hawkins, James Howe, Jules Dossou Azatassou, Maurice Russell, Kimberly Johnson, Jennifer Polsky, and Tarah Friedman (collectively, "Herrera Plaintiffs") attended CSL at some point during 2015 or 2016.  (Third Am. Compl. ¶¶ 30–43, ECF No. 18.)

3.   Plaintiffs Brianna Robertson, Asia Brown, Matthew Yoo, Gary Leto, China McGee, Jody Lyles, Derasean Adegbola, Justin Knoll, Russell Martin, and Lauren Yuhas (collectively, "Robertson Plaintiffs") attended CSL at some point during 2015 or 2016.  (First Am. Compl. ¶¶ 30–39, ECF No. 2.)

4.   Plaintiffs Ephraim Mosley, Yolanda Davis, Ryan Love, Shaun Malone, William Segers, III, Fabba Kijera, Michael Perez, Jasmine Smith, Lauren Tatro, Rachel Bryan, Kabir Buhari, Cierra Blaher, Douglas Walker, Edilia Zuniga, and

Courtenay Sellers (collectively, "Mosley Plaintiffs") attended CSL at some point during 2014, 2015, or 2016. (Compl. ¶¶ 30–45, ECF No. 2.) Nichole Burkhart initially was a plaintiff in the Mosley Action, but voluntarily dismissed her claims against all Defendants without prejudice on April 4, 2018. (Notice Voluntary Dismissal Without Prejudice, ECF No. 269.)

5. Plaintiffs Brittaney Merritt, Elle Pappas, Ashley Good, Lacey Webb, Brent Finnell, Sarah Speed, Adriana Urtubey, Tyler Spillman, Jalen Sanders, and Shereka Banks (collectively, "Merritt Plaintiffs") attended CSL at some point during 2014, 2015, or 2016. (Compl. ¶¶ 30–39, ECF No. 2.)

6. Plaintiffs Patience Frisby, Charlie Carpenter, Brandon Potter, Erica Bennerman, Melissa Grisewood, Kathleen Pasquarella, Demetria Braden, Jamal Williams, Annabelle Pardo, Omar Bashi, Jasmin Brooks, Ashlee McGinnas, Rachel Gainey, Ashlin Massey, Steven Burleson, Mary Welch, and Charles Hornack (collectively, "Frisby Plaintiffs") attended CSL at some point during 2014, 2015, or 2016. (Compl. ¶¶ 30–46, ECF No. 2.)

7. The Court has subsequently been assigned multiple related actions brought by other CSL students.

## B. Defendants

8. Defendants initially included Sterling Capital Partners, L.P., a Delaware limited partnership with its principal place of business in Chicago, Illinois, and Sterling Capital Partners GmbH & Co. KG, a German limited partnership with its principal place of business in Chicago, Illinois (collectively, the "Sterling

Defendants"). *See Herrera v. Charlotte School of Law, LLC*, 2018 NCBC LEXIS 15, at *5 (N.C. Super. Ct. Feb. 14, 2018). All the claims against the Sterling Defendants have been dismissed. *See id.* at *20. (*See also* Notice of Voluntary Dismissal Without Prejudice, ECF No. 263; Notice of Voluntary Dismissal Without Prejudice, ECF No. 264.)

9. InfiLaw Holding, LLC ("Holding") is a Delaware limited-liability company with its principal place of business in Florida. (Third Am. Compl. ¶ 348.) Holding owns InfiLaw Corporation ("InfiLaw"). (Third Am. Compl. ¶ 348.)

10. InfiLaw is incorporated in Delaware with its principal place of business in Naples, Florida and is licensed to do business in North Carolina. (Third Am. Compl. ¶ 347.) InfiLaw owns three for-profit law schools, including CSL. (*See* Third Am. Comp. ¶ 350.)

11. CSL is a Delaware limited-liability company with its principal place of business in Charlotte, North Carolina. (Third Am. Compl. ¶ 344.) CSL was founded in 2006 as a for-profit law school and was accredited by the ABA in 2011. (Third Am. Compl. ¶ 345.) CSL ceased operations in August 2017.

12. Jay Conison ("Dean Conison") is a citizen and resident of Charlotte, North Carolina and was CSL's Dean from 2013 until it closed in August 2017. (Third Am. Compl. ¶ 351.)

13. Chide Ogene ("Ogene") is a citizen and resident of Charlotte, North Carolina and was CSL's President from 2015 until it closed. (Third Am. Compl. ¶ 353.)

14.     Don E. Lively ("Lively") is a resident of Phoenix, Arizona and was CSL's President from 2011–2014.  (Third Am. Compl. ¶ 354.)

15.     Rick Inatome ("Inatome") is the Chief Executive Officer of InfiLaw and Holding.  (Third Am. Compl. ¶ 356.)

## II.     PROCEDURAL HISTORY AND BACKGROUND

16.     The Herrera Action was initiated on January 31, 2017, with a Second Amended Complaint filed on February 20, 2017.

17.     The Robertson Action was initiated on March 10, 2017, with a First Amended Complaint filed on March 28, 2017.

18.     The Herrera Action was designated a mandatory complex business case by order of the Chief Justice on March 27, 2017, and assigned to the undersigned on March 29, 2017.

19.     The Herrera Plaintiffs filed their Third Amended Complaint on March 28, 2017.

20.     The Robertson Action was designated a mandatory complex business case by order of the Chief Justice and assigned to the undersigned on April 18, 2017.

21.     The Mosley Action was initiated on March 28, 2017, the Merritt Action was initiated on April 13, 2017, and the Frisby Action was initiated on May 1, 2017.

22.     The Mosley Action, Merritt Action, and Frisby Action were designated mandatory complex business cases by order of the Chief Justice on June 12, 2017, and assigned to the undersigned on June 13, 2017.

23. On June 16, 2017, the Sterling Defendants moved to dismiss the Actions pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). (ECF No. 29.)

24. On June 16, 2017, the CSL Defendants collectively moved to dismiss the Actions pursuant to Rule 12(b)(6). (ECF No. 35.) Holding, Lively, and Inatome separately moved to dismiss the Actions pursuant to Rule 12(b)(2). (ECF No. 33.)

25. The Court, with consent of the parties, entered the Stipulation and Case Management Order No. 1 on June 21, 2017, which provides, *inter alia*, that subsequently filed actions arising out of the same or substantially similar events will be treated as mandatory complex business cases, without need for an additional Notice of Designation, assigned to the undersigned, and then referred to as "Related Actions." (Stipulation and Case Management Order No. 1 ¶ 2, ECF. No. 38.) The Court designated the Herrera Action as the Master File and its Third Amended Complaint as the operative complaint. (Stipulation and Case Management Order No. 1 ¶ 4.)

26. At present, there are over ninety actions assigned to the Court, representing claims of 156 former CSL students, with an indication that there are others yet to be filed. Each Plaintiff brings claims individually and there is no putative class action pending before the Court. The five Actions captioned above were the first cases initiated and the only cases pending when the CSL Defendants filed their Motion.

27.     There are also four actions in the United States District Court for the Western District of North Carolina, involving similar allegations against some of the CSL Defendants, three of which were brought as putative class actions: (1) *Barchiesi v. Charlotte School of Law., LLC*, No. 3:16-CV-00861 (purported class action); (2) *Levy v. Charlotte School of Law, LLC*, No. 3:17-CV-00026-GCM (purported class action); *Krebs v. Charlotte School of Law, LLC*, No. 3:17-CV-00190-GCM (purported class action); and (4) *Ash v. Charlotte School of Law, LLC*, No. 3:17-CV-00039-GCM (individual action).  Presiding Judge Graham C. Mullen has entered a number of orders narrowing the claims in those federal actions.  *See, e.g., Levy v. InfiLaw Corp.*, No. 3:17-CV-00026-GCM, 2017 U.S. Dist. LEXIS 131106, at *16 (W.D.N.C. Aug. 17, 2017); *Barchiesi v. Charlotte School of Law, LLC*, No. 3:16-CV-00861, 2017 U.S. Dist. LEXIS 131107, at *22 (W.D.N.C. Aug. 17, 2017); *Krebs v. Charlotte School of Law, LLC*, No. 3:17-CV-00190-GCM, 2017 U.S. Dist. LEXIS 143060, at *34 (W.D.N.C. Sept. 5, 2017).

28.     When the Court heard arguments on Defendants' motions on September 12, 2017, Plaintiffs requested the right to pursue jurisdictional discovery before the Court ruled on Defendants' Rule 12(b)(2) motions.  The Court ordered limited jurisdictional discovery related to Holding, Inatome, and Lively and reserves ruling on their motion to dismiss for lack of personal jurisdiction until such discovery is completed.  (Order Granting In Part Plaintiffs' Request for Jurisdictional Discovery, ECF No. 239.)

29.     On February 14, 2018, the Court dismissed all claims against the Sterling Defendants in the Actions for lack of personal jurisdiction. *See Herrera v. Charlotte School of Law, LLC*, 2018 NCBC LEXIS 15, at \*19–20 (N.C. Super. Ct. Feb. 14, 2018).

30.     On March 22, 2018, Plaintiffs filed two Notices of Voluntary Dismissal Without Prejudice, which together dismissed all claims against the Sterling Defendants in all of the Related Actions without prejudice.  (Notice of Voluntary Dismissal Without Prejudice, ECF No. 263; Notice of Voluntary Dismissal Without Prejudice, ECF No. 264.)

31.     The CSL Defendants' Rule 12(b)(6) Motion is ripe for resolution.

### III.    FACTUAL BACKGROUND

32.     The Court does not make findings of fact on a motion to dismiss pursuant to Rule 12(b)(6), but recites only the facts that are relevant to the Court's determination of the Motion.  The following facts are accepted as true solely for purposes of the Motion, and all reasonable inferences are construed in Plaintiffs' favor.

33.     CSL opened in 2006 as a for-profit law school in Charlotte, North Carolina and was accredited by the American Bar Association ("ABA") in 2011. (Third Am. Compl. ¶¶ 3, 345.)

34.     In March 2017, CSL had approximately 700 students.  (Third Am. Compl. ¶ 3.)  CSL's admission standards were lower than most accredited law schools, with CSL regularly admitting 50% to 75% of all applicants.  (Third Am. Compl. ¶ 3.)

CSL's attrition rates for first-year students was 32.1% in 2014, 44.6% in 2015, and 49.2% in 2016. (Third Am. Compl. ¶ 370.)

35. After receiving its accreditation, CSL advertised that it had "a rigorous curriculum [that was] created to ensure that [their] students are equipped with practical skills that will allow them to thrive in a professional setting." (Third Am. Compl. ¶ 5.) CSL also stated on its website that it had "been awarded full accreditation by the ABA in 2011" and that such accreditation required the school to "ha[ve] *full compliance with each of the ABA's standards.*" (Third Am. Compl. ¶ 4 (alteration in original); *see also* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss Ex. A ("Department of Education Letter"), at 10–11, ECF No. 52.2.)[1]

36. CSL offered merit-based scholarships to some students. (Third Am. Compl. ¶ 360.) Six of the Herrera Plaintiffs had their academic scholarships revoked after their first year. (*See* Third Am. Compl. ¶¶ 362–67.) Plaintiffs contend that CSL manipulated grading to make it extremely difficult for students to maintain their scholarships, but did not inform prospective students that many students lose their scholarships after their first year. (*See* Third. Am. Compl. ¶ 361.) Four of the Herrera Plaintiffs who had scholarships were all placed in the same classes. (Third Am. Compl. ¶ 24.) Plaintiffs contend that CSL purposefully placed scholarship students in the same classes "so that the grading curve as implemented by CSL would

---

[1] The Court may reference the Department of Education Letter because the Third Amended Complaint refers to the letter throughout the complaint and quotes from it extensively. *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009); (Third Am. Compl. ¶¶ 383–88.)

automatically reduce the number of qualified scholarship recipients." (Third Am. Compl. ¶ 24.)

37. CSL advertised to prospective students for the class of 2017 (presumably applicants enrolling in 2014) that CSL would implement a "C" curve for their first year, but no curve for their second and third year of studies. (Third Am. Compl. ¶ 368.) Plaintiffs contend that, in 2015, CSL changed its grading system so that the class of 2017 would be graded on a "C" curve for all three years, but "never disclosed [the change] to the Class of 2017 students during their application process." (Third Am. Compl. ¶ 369.)

38. Plaintiffs argue that CSL implemented a grading curve and "lax admission standards" as a part of a scheme to make money. (Third Am. Compl. ¶ 370; *see also* Third Am. Compl. ¶ 371.) Plaintiffs also contend that CSL would dismiss students for "academic reasons" and then allow those students to immediately re-enroll the next semester. (Third Am. Compl. ¶ 371.)

39. The ABA conducted an on-site Three Year Interval Evaluation of CSL from March 16–19, 2014. (Third Am. Compl. ¶ 374.) Students, faculty, and staff were aware that the ABA was conducting an evaluation. During their evaluation, ABA representatives attended classes and met with students, faculty, and staff. (Third Am. Compl. ¶ 374.)

40. On September 15, 2014, the ABA provided CSL with a seventy-two page Inspection Report, which included information on CSL's students' admissions qualifications, output metrics, and bar passage rates and discussed CSL's legal

education program and financial operations. (Third Am. Compl. ¶ 375.) "The ABA informed CSL that the [Inspection] Report would provide the basis for its determination on whether CSL's programs were operating in compliance with the ABA Standards," and invited CSL to comment on or note any factual errors. (Third Am. Compl. ¶ 375.)

41. CSL responded to the Inspection Report in October 2014. (Third Am. Compl. ¶ 375.)

42. In January 2015, the ABA issued its first decision related to its evaluation of CSL, stating "that it had 'reason to believe' that CSL had 'not demonstrated compliance' with certain ABA" Standards for the Approval of Law Schools ("Standards"). (Third Am. Compl. ¶ 376.) The ABA requested that CSL provide it with additional information to allow the ABA to make its determination as to whether CSL was in compliance with Standards 301(a), 501(a), and 501(b) and Interpretation 501-1. (Third Am. Compl. ¶ 376.) Those Standards require a law school to "maintain a rigorous program of legal education," and "maintain sound admission policies and practices consistent with the Standards." (Third Am. Compl. ¶ 376.) Specifically, Standard 501(b) states that "[a] law school shall not admit an applicant who does not appear capable of satisfactorily completing its program of legal education and being admitted to the bar." (Third Am. Compl. ¶ 376.)

43. After receiving the ABA's January 2015 decision, Dean Conison emailed all of CSL's students, stating that "[t]he report of the [ABA] site visit team was very positive," and that it "contains only a few items on which we need to report back with

updated information." (Third Am. Compl. ¶ 377.) Dean Conison assured students that "[r]equests to report back are normal" and that "in [his] experience decision letters typically contain more requests to report back than" CSL's letter contained. (Third Am. Compl. ¶ 377.)

44. On February 3, 2016, the ABA issued its second decision, in which it concluded that CSL was not in compliance with Standards 301(a), 501(a), 501(b), and Interpretation 501-1. (Third Am. Compl. ¶ 379.) The ABA made twenty factual findings, including findings that CSL failed to demonstrate that it was maintaining a rigorous legal curriculum or sound admission policies and practices. (Third Am. Compl. ¶ 379.)

45. In July 2016, the ABA issued its third decision, in which it reiterated that CSL was not in compliance with Standards 301(a), 501(a), 501(b), and Interpretation 501-1 and further concluded that "the issues of non-compliance . . . *[were] substantial and [had] been persistent.*" (Third Am. Compl. ¶ 380.) The ABA further concluded that CSL's "plans for bringing itself into compliance with the Standards have not been proven effective or reliable." (Third Am. Compl. ¶ 380.) The ABA made forty-four specific factual findings, including that CSL's "[a]ttrition is substantial and suggests that [CSL's] admission process is not as predictive of academic success as it might be." (Third Am. Compl. ¶ 380; *see* Department of Education Letter 5.) Additionally, the ABA noted concerns over CSL's bar passage rates, explaining that CSL's "ultimate bar passage rates . . . may be in compliance for 2014, but the 17% missing or never passed could affect that compliance," and that

CSL "is not in compliance for 2015 at this point, with 43% either missing or never [having] passed the bar." (Third Am. Compl. ¶ 380.)

46.     As a part of its third decision, the ABA "directed CSL to take a series of remedial actions, including . . . requir[ing] CSL to disclose the [ABA] Committee's decision to students and the public." (Department of Education Letter at 7.)

47.     In August 2016, CSL appealed parts of the ABA's decision. (Third Am. Compl. ¶ 381; *see* Department of Education Letter 7.) The ABA held a hearing on October 21, 2016. (Third Am. Compl. ¶ 381.) Dean Conison testified at the hearing, stating that CSL was "not appealing th[e] conclusion of noncompliance with Standards 301 and 501," (Third Am. Compl. ¶ 381), but requested that the ABA "eliminate the requirement that CSL publicly disclose the findings of noncompliance or, in the alternative, delay such disclosure for one year," and vacate the finding that CSL's noncompliance had been substantial and persistent. (Department of Education Letter 7.)

48.     The ABA issued its fourth and final decision on November 14, 2016. (Third Am. Compl. ¶ 382.) The ABA again concluded that CLS was not in compliance with Standards 301(a), 501(a), and 501(b) and that such noncompliance was substantial and persistent. (Third Am. Compl. ¶ 382.) The ABA placed CSL on probation and ordered remedial action. (Third Am. Compl. ¶ 382.) The ABA required CSL to provide "all admitted students and publish prominently on its website in a place and manner acceptable to the Managing Director [of the ABA] a statement advising that the Law School has been placed on probation and of the specific

remedial actions the Law School is required to take." (Pl.'s Mem. Opp'n Defs.' Mot. Dismiss Ex. C ("Notice of Probation"), at 2, 51.4; *see* Third Am. Compl. ¶ 382.)[2] Additionally, the ABA ordered CSL to provide the ABA with a written plan to achieve compliance with Standards 301(a), 501(a), and 501(b) and "its admissions data and admissions methodology." (Notice of Probation 1–2.)

49. The ABA did not revoke CSL's accreditation.

50. Other than Dean Conison's email characterizing the ABA's January 2015 decision as "very positive," (Third Am. Compl. ¶ 377), CSL made no disclosures regarding the ABA's findings and decisions until the ABA issued its November 14, 2016 final decision.

51. The Department of Education became aware of the ABA's findings and, on December 19, 2016, denied CSL's Recertification Application to Participate in Federal Student Financial Assistance Program. (Third Am. Compl. ¶ 383; Department of Education Letter 1.)

52. The Department of Education found that CSL had substantially misrepresented "the 'nature and extent' of CSL's accreditation." (Third Am. Compl. ¶ 384; *see also* Department of Education Letter 10.) Specifically, the Department of Education noted that on CSL's website it promoted that "it 'ha[d] been awarded full accreditation' by the ABA in 2011, which required the school to 'ha[ve] established *full compliance with each of the ABA's standards*," and that "CSL promoted, and

---

[2] The Court can reference the Notice of Probation, without converting this Motion to a Rule 56 motion, because the Third Amended Complaint refers to notice in the complaint. *See Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009); (Third Am. Compl. ¶ 382.)

continues to promote, that . . . the [ABA] Council had determined in June 2011 that CSL was 'in full compliance with the ABA Standards.'" (Department of Education Letter 10–11 (second alteration in original); *see also* Third Am. Compl. ¶ 385.) The Department of Education concluded that such statements were misleading because "[a] student or prospective student could reasonably read these statements and conclude that the 2011 finding of 'full compliance' by the ABA was the final word as to the institution's compliance with the ABA's accreditation standards." (Department of Education Letter 11; *see also* Third Am. Compl. ¶ 385.)

53.  CSL's participation in the federal financial aid program ended on December 31, 2016. (Department of Education Letter 1.)

54.  Plaintiffs complain that the CSL Defendants failed to make "any statement so as to shed light to the lack of financial aid," (Third Am. Compl. ¶ 417), "waited thirty (30) days after the December 19, 2016 [Department of Education] denial letter to issue any sort of public statement," (Third Am. Compl. ¶ 14), and refused to meet with students to discuss the Department of Education's decision. (*See* Third Am. Compl. ¶ 14.) Plaintiffs contend that the CSL Defendants "concealed the severity of the [Department of Education's denial] from Plaintiffs by locking the seventh floor doors at CSL and cutting off the elevator access to the seventh floor, thereby leaving current students in the dark." (Third Am. Compl. ¶ 417.)

55.  CSL closed in August 2017.

## IV.    STANDARD OF REVIEW

56.    In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).  The Court reviews the allegations of the complaint in the light most favorable to the Plaintiffs.  The Court construes the factual allegations in the complaint liberally, but is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)).  The Court may also ignore a party's legal conclusions.  *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

57.    Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Krawiec v. Manly*, No. 252A16, 2018 N.C. LEXIS 222, at *5 (N.C. Apr. 6, 2018).  Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the

claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

58. Where the pleading refers to certain documents, the Court may consider those documents without converting the motion into one for summary judgment under Rule 56. *See Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009); *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (explaining that "a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant").

## V.  ANALYSIS

59. Plaintiffs assert nine claims against the CSL Defendants: (1) breach of contract, (2) breach of the implied covenant of good faith, (3) constructive fraud, (4) fraud, (5) intentional misrepresentation, (6) negligent misrepresentation, (7) unjust enrichment, (8) unfair or deceptive trade practices, and (9) punitive damages.[3] The CSL Defendants move to dismiss all of Plaintiffs' claims, contending that Plaintiffs have failed to both state cognizable claims and to plead the claims with the requisite particularity. Before assessing each claim, the Court must first determine whether it should take judicial notice of documents as requested by Plaintiffs and the CSL Defendants.

---

[3] While Plaintiffs list unconscionability and breach of fiduciary duties as claims, (*see* Third Am. Compl. ¶ 29), it appears that this was a drafting error because those claims are not mentioned anywhere else in the Third Amended Complaint and there are no allegations specific to either claim. The Court concludes that no such claims have been alleged.

**A.** **The Court Will Take Judicial Notice of the 509 Reports and Employment Reports, But Not The Facts Included in The Reports.**

60.     The Court may take judicial notice of adjudicative facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C. Gen. Stat. § 8C-1, Rule 201(b) (2015). The Court may take judicial notice of adjudicative facts "at any stage of the proceeding." *Id.* at § 8C-1, Rule 201(f); *see also Wood v. J.P. Stevens & Co.*, 297 N.C. 636, 641, 256 S.E.2d 692, 696 (1979); *Zloop, Inc. v. Parker Poe Adams & Bernstein, LLP*, No. 17 CVS 5480, 2018 NCBC LEXIS 16, at *14 (N.C. Super. Ct. Feb. 16, 2018). In fact, when a party requests that the Court take judicial notice of a fact and supplies the Court with the necessary information, the Court is required to take judicial notice of the fact if it satisfies Rule 201(b). *See* N.C. Gen. Stat. § 8C-1, Rule 201(d).

61.     As long as the website's authenticity is not in dispute and the fact is "capable of accurate and ready determination," then the Court may take judicial notice of information available on a website. N.C. Gen. Stat. § 8C-1, Rule 201(b) (2015); *see Feeling Great, Inc. v. N.C. Dep't of Revenue,* No. 14 CVS 11139, 2015 NCBC LEXIS 84, at *10 (N.C. Super. Ct. Aug. 20, 2015). This Court has previously taken judicial notice of information provided on a party's website. *See LegalZoom.com, Inc. v. N.C. State. Bar*, No. 11 CVS 15111, 2014 NCBC LEXIS 9, at *3–4 (N.C. Super. Ct. Mar. 24, 2014).

62.     Plaintiffs ask the Court to take judicial notice of the ABA Council Decision and Notice of Probation Letter for a different law school. (*See* Pl. Mem.

Opp'n Defs.' Mot. Dismiss Ex. B, ECF No. 51.3.) The Court need not address this document because it is irrelevant to this Motion. (*See* Pl. Mem. Opp'n Defs.' Mot. Dismiss Ex. B.)

63. The CSL Defendants ask the Court to take judicial notice of seven additional exhibits that they submitted with their Motion. First, the CSL Defendants ask the Court to take judicial notice of CSL's ABA Standard 509 Information Reports for 2011–2016 ("509 Reports") and CSL's Employment Summary Reports, available on CSL's website ("Employment Summary Reports"). (*See* Defs.' Mem. Supp. Mot. Dismiss, Ex. 1, ECF No. 36.4; Defs.' Mem. Supp. Mot. Dismiss, Ex. 6, ECF No. 36.5; Defs.' Mem. Supp. Mot. Dismiss, Index of Exhibits, ECF No. 36.2.)

64. The Court concludes that it may take judicial notice of the fact that these documents were available on CSL's website, but not the disputed facts contained in those reports. *See Hensey v. Hennessy*, 201 N.C. App. 56, 69, 685 S.E.2d 541, 550 (2009) (quoting *Hinkle v. Hartsell*, 131 N.C. App. 833, 835, 509 S.E.2d 455, 458 (1998)) ("[A] a court cannot take judicial notice of a disputed question of fact."); (Pls.' Mem. Opp'n Defs.' Mot. Dismiss 13, ECF No. 51 (contending that these reports "rely heavily on data provided by CSL" that Plaintiffs allege is unreliable); Third Am. Compl. ¶ 388.).

65. The Court concludes that the remaining documents that the CSL Defendants request the Court to judicially notice are irrelevant to the Motion.

**B.**    **Plaintiffs' Breach-of-Contract Claims Must Be Dismissed.**

66.    Plaintiffs contend that the CSL Defendants entered into contracts "to provide the Plaintiffs, *inter alia*, with a JD program fully compliant with each of the ABA Standard[s]," and breached those contracts by failing to comply with the ABA Standards. (Third. Am. Compl. ¶ 400.) The CSL Defendants contend that Plaintiffs' breach-of-contract claims simply restate a claim for educational malpractice, which is not recognized in North Carolina, and Plaintiffs fail to allege facts suggesting that such contracts actually exist. (*See* Defs.' Mem. Supp. Mot. Dismiss 12, 17, ECF No. 36.)

67.    North Carolina courts have repeatedly held that "educational malpractice claims . . . are not recognized under North Carolina law." *Arnold v. Univ. of N.C. at Chapel Hill*, No. COA16-573, 2017 N.C. App. LEXIS 292, at \*9 (N.C. App. Apr. 18, 2017); *see also Thomas v. Olshausen*, No. 3:07CV130-MU, 2008 U.S. Dist. LEXIS 48667, at \*5 (W.D.N.C. June 16, 2008). An educational malpractice claim is any claim, sounding in tort or contract, that requires the Court to inquire "into the nuances of educational processes and theories." *Ryan v. Univ. of N.C. Hosps.*, 128 N.C. App. 300, 302, 494 S.E.2d 789, 791 (1998) (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992)). Courts have refused to recognize educational malpractice claims, as a matter of public policy, because such claims would require courts "to make judgments as to the validity of broad educational policies" and "to sit in review of the day-to-day implementation of these policies." George L. Blum, Annotation, *Tort Liability of Public Schools and Institutions of Higher Learning for*

*Educational Malpractice*, 11 A.L.R. 7th Art. 5 (2016); *see also Ross*, 957 F.2d at 414. When a plaintiff asserts a claim against an educational institution, whether framed as a breach of contract or a tort, the court must determine if ruling on the issue would "require an inquiry into the nuances of educational processes and theories." *Ryan*, 128 N.C. App. at 302, 494 S.E.2d at 791 (quoting *Ross*, 957 F.2d at 417).

68.     To assert a legally enforceable contract against a university, "the student 'must point to an identifiable contractual promise that the University failed to honor'" that can be judged objectively. *Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 219, 768 S.E.2d 582, 592 (2015) (quoting *Ryan*, 128 N.C. App. at 302, 494 S.E.2d at 791).   A mere promise to provide an education is not sufficient to support a claim for breach of contract unless the plaintiff alleges that the institution failed to provide any education. *Id.* at 218, 768 S.E.2d at 591  (quoting *Ross*, 957 F.2d at 417) (explaining that a student can state a cognizable breach-of-contract claim where the essence of the claim is not "that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all"); *Ross*, 957 F.2d at 417 ("[I]f the defendant took tuition money and then provided no education, or alternately, promised a set number of hours of instruction and then failed to deliver, a breach of contract action may be available.").   But if the only allegation is that the education provided was not sufficient, rigorous, or adequate, then the claim must be dismissed because "there is no cognizable claim for educational malpractice under North Carolina law." *Thomas*, 2008 U.S. Dist. Lexis 48667, at *5 (concluding that to the extent "the claims seek to allege that Defendants

denied [plaintiff] or his son access to more challenging educational programs, the claims should be dismissed"); *see, e.g., Arnold*, 2017 N.C. App. LEXIS 292, at *10 (affirming the trial court's dismissal of plaintiffs' breach-of-contract claim because "plaintiffs are asking this Court to inquire into the substance of allegedly deficient courses and make a determination regarding their educational adequacy (or inadequacy)").

69. In contrast, where a student's claim includes "identifiable contractual promises that the University failed to honor," beyond promising a quality education, and the court can make "an objective assessment of whether the institution made a good faith effort to perform on its promise," without inquiring into the nuances of educational processes, then the breach-of-contract claim can survive. *Ryan*, 128 N.C. App. at 302, 494 S.E.2d at 791 (finding that the student's allegation that a university breached its contract by failing to provide a one-month rotation in gynecology was sufficient to support his breach-of-contract claim); *see also Williams v. Livingstone College, Inc.*, No. COA14-696, 2015 N.C. App. LEXIS 99, at *8–9 (N.C. App. Feb. 17, 2015) ("[A] student may bring a breach of contract action related to an 'educational contract' when the student is able to point to an identifiable contractual promise that the university failed to honor."); *see, e.g., Supplee*, 239 N.C. App. at 220, 768 S.E.2d at 592 (quoting *Ross*, 957 F.2d at 417) (concluding that there was sufficient evidence of plaintiff's breach-of-contract claim where the college failed to perform a background check, which was a specific term of the contract that did not require an "inquiry into the nuances of educational processes"); *McFadyen v. Duke Univ.*, 786 F.

Supp. 2d 887, 983 (M.D.N.C. Mar. 31, 2011) (allowing plaintiff's breach-of-contract claim to proceed as to plaintiff's allegation that "Duke failed to follow promised procedures for imposing discipline (particularly suspension) under the Code of Conduct"), *aff'd in part, rev'd in part on other grounds sub nom. Evans v. Chalmers*, 703 F.3d 636, 645 n.1, 659 (4th Cir. 2012).

70.     Here, Plaintiffs fail to sufficiently allege that CSL made any specific promises, beyond the general promise of providing a legal education, sufficient to support a cognizable contract claim.  Plaintiffs allege that "[i]n consideration for the fees and expenses paid to CSL by Plaintiffs, CSL entered into implied contracts with Plaintiffs to provide a legal education which was in total compliance with the Standards of the American Bar Association."  (E-mail from Chris Bagley, Plaintiffs' Counsel, to Kaitlin Price, Law Clerk, and Defendants' Counsel (Oct. 20, 2017)); *see also* Third Am. Compl. ¶ 400.)

71.     Plaintiffs argue that the Court can objectively determine whether CSL "made a good faith effort to perform on its promise" to be in total compliance with the ABA Standards.  *Ryan*, 128 N.C. App. at 302, 494 S.E.2d at 791 (quoting *Ross*, 957 F.2d at 417); (*see* Third Am. Compl. ¶ 400.)  But Plaintiffs' contention relies on their ability to establish that the CSL Defendants and Plaintiffs actually entered into a contract requiring CSL to be "fully compliant with each ABA Standard."  (Third Am. Compl. ¶ 400); *see Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007) (quoting *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (stating a breach-of-contract claim requires a party to allege facts demonstrating "(1) [the]

existence of a valid contract and (2) breach of the terms of that contract"). Plaintiffs do not allege that an express agreement exists, but instead seek an inference that CSL promised that it would be in total compliance with all the ABA Standards. (*See* Pls.' Mem. Opp'n Defs.' Mot. Dismiss 22–23.)

72. A "formal university-student contract is rarely employed and, consequently, 'the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and other publications." *Ross*, 957 F.2d at 417 (quoting *Wickstrom v. N. Idaho Coll.*, 725 P.2d 155, 157 (Idaho 1986)). However, general policies, alone, are not sufficient to establish an implied contract. *See, e.g.*, *McFadyen*, 786 F. Supp. 2d at 983 (concluding that the university's "general policy against harassment [did] not provide any indication of any mutual agreement between Duke and the students," but that the Code of Conduct's specific provisions "outlining certain procedures to be followed before a student would be suspended" were sufficient to establish a contract term); *Giuliani v. Duke Univ.*, No. 1:08CV502, 2010 U.S. Dist. LEXIS 32691, at *25 (M.D.N.C. Mar. 30, 2010) (concluding that "in the absence of a contract between Plaintiff and Duke University expressly incorporating the student handbooks and related documents, Plaintiff's breach of contract claim should be dismissed").

73. Plaintiffs' allegations merely state the undisputed fact that CSL was accredited by the ABA in 2011. (*See* Third Am. Compl. ¶ 4.) As discussed below, the additional statement that such "accreditation required CSL to 'ha[ve] full compliance with each of the ABA's standards" may prove to be sufficient to support a claim for

misrepresentation, but it does not support a reasonable inference that CSL entered into contracts with all of its students promising to always be "fully compliant" with the ABA Standards. (Third Am. Compl. ¶¶ 4, 400.)

74. Plaintiffs have alleged no facts suggesting that CSL agreed that it would always be in full compliance with all ABA Standards. Even assuming, *arguendo*, that the CSL Defendants misrepresented that they were in full compliance with the ABA Standards from 2011 through 2016, (*see* Third Am. Compl. ¶¶ 4, 385), that statement is, at most, an advertisement, not a contractual term. CSL's website advertisements are not sufficient to establish a general policy or specific promises that demonstrate a mutual agreement between CSL and Plaintiffs that CSL would always be in compliance with all the ABA Standards.

75. The Court concludes that Plaintiffs have not alleged sufficient facts to demonstrate that CSL promised to do anything more than provide a legal education to Plaintiffs, and accordingly, their claims for breach of contract must be dismissed.

76. The Court need not address the CSL Defendants' additional arguments challenging Plaintiffs' contract claims. (*See* Defs.' Mem. Supp. Mot. Dismiss 17–19.)

## C. **Plaintiffs' Claims for Breach of Covenant of Good Faith and Fair Dealing Must Be Dismissed.**

77. "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *SunTrust Bank v. Bryant/Sutphin Prop., LLC*, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 (2012) (quoting *Bicycle Transit Auth. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985)). "A breach of the implied

covenant of good faith and fair dealing 'requires the wrongful intent of a party to deprive another party of its contractual rights.'" *RREF BB Acq. v. MAS Props., L.L.C.*, No. 13 CVS 193, 2015 NCBC LEXIS 61, at \*47 (N.C. Super. Ct. June 9, 2015) (quoting *Hamm v. Blue Cross & Blue Shield of N.C.*, No. 05 CVS 5606, 2010 NCBC LEXIS 17, at \*20 (N.C. Super. Ct. Aug. 27, 2010)). Thus, the existence of a valid contract is a prerequisite to a claim for breach of the implied covenant of good faith and fair dealing.

78. The Court has dismissed Plaintiffs' claims for breach of contract. Therefore, it follows that Plaintiffs' claims for breach of the implied covenant of good faith must also be dismissed.

**D. Plaintiffs' Claims for Constructive Fraud Must Be Dismissed.**

79. "Constructive fraud differs from actual fraud in that it is based on a confidential relationship rather than a specific misrepresentation." *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 482, 593 S.E.2d 595, 599 (2004) (quoting *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 244 (1997)). To state a claim for constructive fraud "a plaintiff must 'allege *facts and circumstances* (1) which created the relationship of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" *Governor's Club Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 263, 567 S.E.2d 781, 795 (2002) (alteration in original) (quoting *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981)). Stated differently, "a plaintiff must show

(1) the existence of a fiduciary duty, and (2) breach of that duty." *Id.* at 249–50, 567 S.E.2d at 788 (quoting *Keener Lumber Co., Inc., v. Perry*, 149 N.C. App. 19, 28, 560 S.E.2d 817, 824 (2002)). Plaintiffs must allege the specific facts and circumstances that created the relationship of trust and confidence rather than relying on conclusory allegations. *Id.* at 263, 567 S.E.2d at 795.

80. "[A] fiduciary relationship arises whenever 'there is confidence reposed on one side, and resulting domination and influence on the other.'" *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 53, 790 S.E.2d 657, 660 (2016) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). Whether a fiduciary relationship exists "depends ultimately on the circumstance." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991). However, "North Carolina courts have refused to recognize fiduciary relationships in certain circumstances." *J.W. v. Johnston Cty. Bd. of Educ.*, No. 5:11-CV-707-D, 2012 U.S. Dist. LEXIS 136300, at *41 (E.D.N.C. Sept. 24, 2012).

81. In *Ryan v. University of North Carolina Hospitals*, the Court of Appeals refused to recognize a fiduciary relationship between "educator/supervisors and medical residents." 2005 N.C. App. LEXIS 402, at *11–12 (N.C. App. Mar. 1, 2005). The Court of Appeals explained that the University of North Carolina Hospitals had "divided loyalties" because in addition to being plaintiff's teachers, the defendants had other interests, including "protect[ing] the public by ensuring that only qualified doctors graduated from the program" and "ensuring that [the institution's] rules and regulations were followed." *Id.* at *10. The Court of Appeals acknowledged that those

"divided loyalties" distinguished the university and plaintiff's relationship from "fiduciary relationships in which the fiduciary must act primarily for the benefit of another." *Id.*

82.    Relying on *Ryan*, other courts have concluded that North Carolina does not generally recognize "a fiduciary relationship in the academic setting." *McCants v. Nat'l Collegiate Athletic Ass'n*, 201 F. Supp. 3d 732, 748 (M.D.N.C. Aug. 12, 2016); *see also Krebs*, 2017 U.S. Dist. LEXIS 143060, at *22–23 (holding that no fiduciary relationship exists between Charlotte School of Law and its students); *Barchiesi*, 2017 U.S. Dist. LEXIS 131107, at *9–11 (same); *McFadyen*, 786 F. Supp. 2d at 987 (holding that no fiduciary duty exits between students and Duke University); *J.W.*, 2012 U.S. Dist. LEXIS 136300, at *44 (explaining that the court "may not expand North Carolina law to create a fiduciary duty between school boards, school superintendents, and principals and middle school students").

83.    Many other jurisdictions "have [also] been reluctant to find fiduciary relationships in academic settings." *Ryan*, 2005 N.C. App. LEXIS 402, at *10; *see, e.g.*, *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 718 (D. Vt. 2012) (declining to recognize a fiduciary relationship between a student and a university, in part, because "school officials owe duties to *all* students, and fiduciary relationships typically . . . require[ ] the fiduciary  . . . to act exclusively on the dependent's behalf" which would be "unworkable in the school context"); *Bass ex rel. Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d 307, 330–31 (D. Conn. 2010) (finding no facts to establish a fiduciary relationship between the student and the school); *Hendricks v. Clemson*

*University*, 578 S.E.2d 711, 716 (S.C. 2003) (declining "to recognize the relationship between advisor and student as a fiduciary one."); *Shapiro v. Butterfield*, 921 S.W.2d 649, 651 (Mo. Ct. App. 1996) (noting that the plaintiff "cite[d] to no cases in which a fiduciary relationship has been found to exist between a student and faculty advisor").

84. Plaintiffs contend that the CSL Defendants have a fiduciary relationship with Plaintiffs because the CSL Defendants have a much better understanding of the factors that lead to a student's success in law school and Plaintiffs relied upon Defendants "for accurate information about the quality of their legal education." (Pls.' Mem. Opp'n Defs.' Mot. Dismiss 29.) Plaintiffs rely on the allegations that Plaintiffs were "unsophisticated applicants," who were "not experienced in how law schools operate" to support their assertion that the CSL Defendants owed fiduciary duties to Plaintiffs. (Third Am. Compl. ¶ 28; *see also* Pls.' Mem. Opp'n Defs.' Mot. Dismiss 29.)

85. Plaintiffs cannot cite to any authority to support their assertion that the CSL Defendants owed Plaintiffs a fiduciary duty. As such, the Court concludes that the reasoning in *Ryan* is instructive. Similarly to the University of North Carolina Hospitals, CSL could not act exclusively for the benefit of Plaintiffs. *See Krebs*, 2017 U.S. Dist. LEXIS 143060, at *21–22. CSL had loyalties to the public and a duty to ensure that only qualified lawyers graduate from its program. Additionally, CSL had an interest in ensuring that the rules and regulations of the school and the ABA were followed.

86.     Because Plaintiffs have failed to allege a basis to find that the CSL Defendants owed Plaintiffs a fiduciary duty, Plaintiffs' claims for constructive fraud must be dismissed.

**E.    While Plaintiffs allege facts which may constitute actual misrepresentations or fraudulent concealment, they must amend their pleadings to comply with Rule 9(b).**

87.     A plaintiff may allege fraud based on either (1) "an 'affirmative misrepresentation of a material fact,'" or (2) "a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (quoting *Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (1986)). Plaintiffs attempt to allege both.

88.     To plead a claim for fraud, plaintiffs must allege: "(1) [f]alse representation or concealment of a [past or existing] material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Id.* (second alteration in the original) (quoting *Phelps-Dickson Builders, LLC v. Amerimann Partners*, 172 N.C. App. 427, 437, 617 S.E.2d 664, 670 (2005)). When a fraud claim is based on alleged concealment, a plaintiff must further allege that "all or some of the [d]efendants had a duty to disclose material information to them." *Lawrence v. UMLIC-Five Corp.*, No. 06 CVS 20643, 2007 NCBC LEXIS 20, at \*8 (N.C. Super. Ct. June 18, 2007).

89.     Plaintiffs also assert claims for negligent misrepresentation. To plead a claim for negligent misrepresentation, a plaintiff must allege that he "justifiably

relie[d] to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Hunter*, 162 N.C. App. at 484, 593 S.E.2d at 600.

90.  Rule 9(b) requires "the circumstances constituting fraud . . . [to] be stated with particularity," meaning that plaintiffs must allege the "time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." N.C. Gen. Stat. § 1A-1, Rule 9(b) (2015); *Birtha v. Stonemor, N.C., LLC*, 220 N.C. App. 286, 296, 727 S.E.2d 1, 9 (2012) (quoting *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981)). Additionally, Plaintiffs must specifically allege whether they actually relied on the alleged misrepresentations. *Birtha*, 220 N.C. App. at 297, 727 S.E.2d at 10 (finding that the plaintiffs failed to allege fraud with particularity, in part, because they did not allege whether they relied on the misrepresentations). Like allegations of fraud, allegations of negligent misrepresentation must also be stated with particularity in compliance with Rule 9(b). *See Bucci v. Burns*, No. 16 CVS 15478, 2017 NCBC LEXIS 83, at \*7 (N.C. Super. Ct. Sept. 14, 2017); *Deluca v. River Bluff Holdings II, LLC*, No. 13 CVS 783, 2015 NCBC LEXIS 12, at \*20 (N.C. Super. Ct. Jan. 28, 2015).

91.  The Court concludes that Plaintiffs have not alleged facts to support their fraud and negligent misrepresentation claims with sufficient particularity as required by Rule 9(b). The Court elects to grant Plaintiffs leave to file a further

amended complaint in an effort to cure this deficiency, guided by the Court's further analysis below.

1. **Plaintiffs have adequately alleged misrepresentations and concealment.**

92. Plaintiffs bring fraud claims that focus on CSL's statements and concealments concerning the ABA's investigation and decisions regarding CSL's compliance with ABA Standards. While the underlying facts overlap, Plaintiffs present fraud claims based on both concealment and affirmative misrepresentations. As to Plaintiffs' claims for fraud based on affirmative misrepresentations, Plaintiffs allege that the CSL Defendants misrepresented that:

- "Plaintiffs were attending a JD Program that was in full compliance with the ABA standards." (Third Am. Compl. ¶ 407(a).)

- "Plaintiffs would receive a rigorous curriculum that had been created to ensure that Plaintiffs would be equipped with practical skills that would allow Plaintiffs to thrive in a professional setting." (Third Am. Compl. ¶ 407(b).)

- "Plaintiffs would be eligible to receive financial aid in order to complete the CSL JD program." (Third Am. Compl. ¶ 407(c).)

- "CSL's bar passage rates were consistently at or above the state average bar pass rate." (Third Am. Compl. ¶ 407(d).)

- "CSL graduates will be highly sought for legal jobs." (Third Am. Compl. ¶ 407(e).)

- "[A] graduate of CSL is trained at a level of a second year associate attorney." (Third Am. Compl. ¶ 407(f)); and

- "Plaintiffs would be graded on a 'C' curve for only their first year, rather than the entire duration of enrollment." (Third Am. Compl. ¶ 407(g).)

As to Plaintiffs' claims for fraud by concealment, they allege that the CSL Defendants failed to disclose and intentionally concealed information about the ABA's decisions. (Third Am. Compl. ¶ 408.) The factual allegations supporting the affirmative misrepresentation and concealment claims overlap.

93.    In their claim for intentional misrepresentation, Plaintiffs assert that the CSL Defendants intentionally and fraudulently misrepresented "the status of CSL's program and its ability to provide the services it promised as a part of the CSL JD program." (Third Am. Compl. ¶ 423.)

94.    The CSL Defendants contend that: (1) Plaintiffs cannot state a claim for fraud by concealment because they failed to sufficiently allege that the CSL Defendants were required to disclose the ABA's decisions to Plaintiffs; and (2) Plaintiffs cannot state a claim for fraud based on affirmative misrepresentations because they have not alleged any false statements of a past or existing fact.

a.    **Plaintiffs' allegations are adequate to allege that the CSL Defendants had a duty to speak.**

95.    "[S]ilence is fraudulent only when there is a duty to speak." *Lawrence*, 2007 NCBC LEXIS 20, at *8. To state a fraud claim based on concealment, Plaintiffs "must allege that all or some of the [d]efendants had a duty to disclose material information to them," and plead with particularity "the relationship [between

plaintiff and defendant] giving rise to the duty to speak." *Id.* at *8–9 (alteration in original) (quoting *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195–96 (M.D.N.C. 1997)).

96.    A duty to disclose may arise when: (1) "a fiduciary relationship exists between the parties to the transaction"; (2) "a party has taken affirmative steps to conceal material facts from the other"; or (3) "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Hardin*, 199 N.C. App. at 696, 682 S.E.2d at 733 (quoting *Sidden v. Mailman*, 137 N.C. App. 669, 675, 529 S.E.2d 266, 270–71 (2000)). "A fact is material if, had it been known to the party, it would have influenced the party's judgment or decision." *Shaw v. Gee*, No. 16 CVS 3878, 2016 NCBC LEXIS 103, at *11 (N.C. Super. Ct. Dec. 21, 2016).

97.    The Court has held that the CSL Defendants did not owe a fiduciary duty to CSL's students. Accordingly, to establish a duty to speak, Plaintiffs must demonstrate that the CSL Defendants took affirmative steps to conceal material facts from CSL's students or that they were aware of a latent defect that the students would not be able to discover through reasonable diligence.

98.    Plaintiffs assert that the CSL Defendants took several affirmative steps to conceal the ABA decisions, which were clearly material because the CSL Defendants allegedly admitted that "if students and prospective students were aware of the ABA's findings of noncompliance" it "would have a profound impact on admissions." (Third Am. Compl. ¶ 10.)

99. As to whether the CSL Defendants took affirmative steps to conceal the ABA's decisions, Plaintiffs allege that Dean Conison affirmatively represented to students that the ABA's January 2015 decision was "very positive," notwithstanding that the ABA had stated it had reason to believe that CSL was not in compliance with certain Standards. (Third Am. Compl. ¶ 377.) Plaintiffs further allege that the CSL Defendants continued to try to conceal the ABA's decisions after the ABA affirmatively concluded that CSL was not in compliance with fundamental Standards. The CSL Defendants resisted the ABA's directive to disclose their decisions to CSL students by appealing the ABA's July 2016 decision, even though CSL admitted that it was not challenging the ABA's conclusion that CSL was not in compliance with fundamental Standards. (Department of Education Letter 7.) Instead, the appeal sought, in part, to "eliminate the requirement that CSL publicly disclose the [ABA's] findings of noncompliance," (Department of Education Letter 7), because CSL knew that disclosure "would have an adverse impact on [CSL's] ability to retain high-performing students," and "would make applicants much less likely to enroll." (Third Am. Compl. ¶ 10.) These allegations, when taken in a light most favorable to Plaintiffs, are sufficient to allege that the CSL Defendants had a duty to disclose and failed to disclose material information to Plaintiffs, supporting their claims for fraud by concealment.

100. Even if Plaintiffs had not sufficiently alleged that the CSL Defendants had a duty to disclose material information, it is also well-established that absent a prior duty to speak, once a party chooses to speak, the party then "has a duty to make

a full and fair disclosure of facts concerning the matters on which he chooses to speak." *Tillery Envtl. LLC v. A&D Holdings, Inc.*, No. 17 CVS 6525, 2018 NCBC LEXIS 13, at *22 (N.C. Super. Ct. Feb. 9, 2018) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 139, 209 S.E.2d 494, 501(1974)).

101. Dean Conison emailed CSL's students, on behalf of CSL, stating that the ABA's January 2015 decision was "very positive" and that the ABA's additional requests were "normal," despite knowing that the ABA had concluded that it had reason to believe that CSL was not in compliance with fundamental Standards. (Third Am. Compl. ¶ 377; *see* Third Am. Compl. ¶ 376.) That allegation is adequate to allege that the CSL Defendants may have had a duty to disclose additional information about the ABA's subsequent decisions.

102. Accordingly, the Court concludes that Plaintiffs have sufficiently alleged facts adequate to plead that the CSL Defendants had a duty to speak.

### b. **Plaintiffs have adequately pleaded that the CSL Defendants made affirmative misrepresentations.**

103. To allege fraud based on an affirmative misrepresentation, the plaintiff must show that the defendant made a false statement about "a past or existing [material] fact." *Potts v. KEL, LLC*, No. 16 CVS 2877, 2018 NCBC LEXIS 24, at *8 (N.C. Super. Ct. Mar. 27, 2018). "Statements of opinion, predictions of future events, and promises of future intent generally do not give rise to an action for fraud." *Id.*

104. "However, the general rule that no one is liable for an expression of opinion . . . does not apply to the dishonest expression of an opinion not actually entertained." *Leftwich v. Gaines*, 134 N.C. App. 502, 508, 521 S.E.2d 717, 723 (1999)

(quoting 37 C.J.S. *Fraud* § 13, at 190 (1997)). Similarly, if a promise of future conduct "is made with an intent to deceive the party and at the time [it] is made the defendant has no intention of performing his promise," then it can give rise to a fraud claim. *Trull v. Cent. Carolina Bank & Tr. Co.*, 117 N.C. App. 220, 225, 450 S.E.2d 542, 545–46 (1994); *see also Potts*, 2018 NCBC LEXIS 24, at *8. When a plaintiff is asserting a claim for fraud based on a promissory representation, "the plaintiff must allege facts 'from which a court and jury may reasonably infer that the defendant did not intend to carry out such representations when they were made.'" *Potts*, 2018 NCBC LEXIS 24, at *9 (quoting *Whitley v. O'Neal*, 5 N.C. App. 136, 139, 168 S.E.2d 6, 8 (1969)).

105. The Court now addresses the seven alleged affirmative misrepresentations.

106. First, Plaintiffs contend that the CSL Defendants misrepresented that "Plaintiffs would be eligible to receive financial aid." (Third Am. Compl. ¶ 407(c).) The Court concludes that Plaintiffs failed to allege any facts to support this conclusion. There are no facts suggesting that CSL students could not receive financial aid prior to December 30, 2016—when the Department of Education ended CSL's participation in the program. (Department of Education Letter 1; *see* Third Am. Compl. ¶ 383.) The Third Amended Complaint includes no factual assertions suggesting that the CSL Defendants represented that students could receive financial aid after the Department of Education removed CSL from the program. At most, Plaintiffs allege that the CSL Defendants did not promptly issue a statement

responding to the Department of Education's decision to remove CSL from its federal student aid program. (Third Am. Compl. ¶ 14.) The Court concludes that Plaintiffs have not adequately stated a fraud claim based on an actual misrepresentation concerning students' ability to receive financial aid.

107. Second, Plaintiffs contend that the CSL Defendants falsely stated that "a graduate of CSL is trained at a level of a second year associate attorney," and that "CSL graduates will be highly sought for legal jobs." (Third Am. Compl. ¶ 407(e)-(f).) Assuming, first, that fraud claims based on these statements are not barred as improper educational malpractice claims, the Court concludes that these statements are opinions, not facts. As such, Plaintiffs must allege facts from which it can be reasonably inferred that, at the time the CSL Defendants made the statement, they did not believe them to be true. *See Leftwich*, 134 N.C. App. at 508, 521 S.E.2d at 723. Plaintiffs allege that the CSL Defendants knew that their bar passage rates were low, which would directly affect students' ability to obtain legal jobs, and that the ABA was questioning the sufficiency and rigor of CSL's curriculum, making it unlikely that CSL's training was equivalent to a second year associate's training. (*See* Third Am. Compl. ¶ 380 (explaining that the ABA concluded, in July 2016, that CSL's "bar passage rates . . . remain low often significantly so"); *see also* Third Am. Compl. ¶ 379.) While the adequacy of these allegations is questionable, the Court will defer further consideration of these alleged misrepresentations pending the further amended complaint.

108. As to the alleged misrepresentation that CSL "was in full compliance with the ABA standards," the Court concludes that this allegation relates to a factual statement. (Third Am. Compl. ¶ 407(a).) However, it is unclear if Plaintiffs have adequately alleged that the statement was false when made. The general allegations make it difficult to determine if the statement was false when made. (*See, e.g.*, Third Am. Compl. ¶¶ 4, 6.) The Court will again defer its further consideration of whether this statement adequately supports a fraud claim.

109. As to the allegation that CSL misrepresented that it would provide Plaintiffs with a "rigorous curriculum," this statement seems to be asserting a claim for educational malpractice, which is not recognized in North Carolina. (Third Am. Compl. ¶ 407(b)); *See Ryan*, 128 N.C. App. at 302, 494 S.E.2d at 791. To be actionable as a misrepresentation, Plaintiffs must allege facts adequate to suggest that the CSL Defendants had no basis to state or believe that they were providing a rigorous education. The Court will defer its determination of whether Plaintiffs can sufficiently state a claim based on this misrepresentation.

110. As to the alleged misrepresentation that "CSL's bar passage rates were consistently at or above the state average," (Third Am. Compl. ¶ 407(d)), the Court concludes that Plaintiffs have sufficiently alleged a claim for fraud based on this statement. (*See* Third Am. Compl. ¶ 388.)

111. Finally, as to the alleged misrepresentation that "Plaintiffs would be graded on a 'C' curve for only their first year," (Third Am. Compl. ¶ 407(g)), this is an alleged statement of fact, but the allegations suggest that the statement was not false

when it was made, during the recruitment for the Class of 2017, which was presumably in or prior to 2014, because the policy did not change until 2015. (Third Am. Compl. ¶¶ 368–69.) Unless Plaintiffs are able to allege facts that demonstrate that the CSL Defendants knew the statement to be false when made, this statement is inadequate to state a claim for fraud.

2. **Plaintiffs have sufficiently alleged a basis for their negligent misrepresentation claims.**

112. Plaintiffs contend that the CSL Defendants negligently misrepresented the status of CSL's JD program and their ability to provide the educational opportunity promised. (Third Am. Compl. ¶ 429.)

113. "The tort of negligent misrepresentation occurs when a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Hunter*, 162 N.C. App. at 484, 593 S.E.2d at 600 (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988), *rev'd on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991)). The North Carolina Court of Appeals has stated that a breach of duty in negligent misrepresentation claims occurs when:

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he *has a pecuniary interest,* supplies false information for the guidance of others in *their business transactions,* [and thus] is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Jordan v. Earthgrains Baking Cos.*, 155 N.C. App. 762, 767, 576 S.E.2d 336, 340 (2003) (second alteration in original) (quoting *Simms v. Prudential Life Ins. Co. of Am.*, 140 N.C. App. 529, 534, 537 S.E.2d 237, 241 (2000)).

114. "[W]hen the party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Associated Packaging, Inc. v. Jackson Paper Mfg. Co.*, No. 10 CVS 745, 2012 NCBC LEXIS 13, at *44 (N.C. Super. Ct. Mar. 1, 2012) (quoting *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 59, 554 S.E.2d 840, 846–47 (2001)). But "[a] plaintiff is not barred from recovery because he had a lesser opportunity to investigate representations made by someone with superior knowledge." *Associated Packaging, Inc.*, 2012 NCBC LEXIS 13, at *49.

115. Plaintiffs allege that the CSL Defendants continued to represent that CSL was in compliance with all ABA Standards, even after the ABA concluded that CSL was not in compliance with the Standards. (*See* Third Am. Compl. ¶¶ 4–5, 10, 377.) Plaintiffs allege that the CSL Defendants had information concerning the ABA's findings that Plaintiffs were not able to obtain on their own. (Third Am. Compl. ¶¶ 376–82.) The CSL Defendants appear to claim that this cannot be actionable because they had a duty to keep the information confidential. But that contention goes beyond the record that the Court can properly consider at this stage. Accordingly, the allegations, taken as true, may be sufficient to state a claim for negligent misrepresentation.

116. However, to the extent Plaintiffs' claims for negligent misrepresentation rely on the CSL Defendants "omitting material facts to Plaintiffs," (Third Am. Compl. ¶ 430), the claim must be dismissed because North Carolina does not recognize a claim for negligent omission. *See Carmayer, LLC v. Koury Aviation, Inc.*, No. 16 CVS 2717, 2017 NCBC LEXIS 82, at \*38 (N.C. Super. Ct. Sept. 11, 2017).

### 3. The Court cannot, at this time, rule that, if Plaintiffs relied on the alleged misrepresentations or omissions, their reliance was unreasonable as a matter of law.

117. The CSL Defendants also contend that even if Plaintiffs sufficiently allege that the CSL Defendants fraudulently concealed, fraudulently misrepresented, or negligently misrepresented material facts, Plaintiffs have not alleged, and could not allege, that they reasonably relied on such misrepresentations to their detriment because Plaintiffs had access to reports including CSL's admission statistics, bar passage rates, hiring statistics, and scholarship statistics.[4]  This is diametrically opposite of the Department of Education's finding.  (*See* Third Am. Compl. ¶ 385.) Accordingly, the Court does not consider it proper to determine this at this stage.

### F. Plaintiffs' Claims for Unjust Enrichment Must Be Dismissed.

118. To state a claim for unjust enrichment, Plaintiffs must allege "that [they] conferred a benefit on another party, that the other party consciously accepted the benefit, and that the benefit was not conferred gratuitously or by an interference in the affairs of the other party." *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321,

---

[4] Having dismissed all contract claims, the Court does not address the CSL Defendants' contention that the economic loss doctrine bars Plaintiffs' fraud claims because "the same allegations supporting a breach of contract cannot also serve as the basis for a fraud claim." (Defs.' Mem. Supp. Mot. Dismiss 27.)

330, 572 S.E.2d 200, 206 (2002). There is no claim for unjust enrichment if the benefit was "voluntarily bestowed without solicitation or inducement." *HOMEQ v. Watkins*, 154 N.C. App. 731, 733, 572 S.E.2d 871, 872 (2002) (quoting *Wright v. Wright*, 305 N.C. 345, 350, 289 S.E.2d 347, 351 (1982)).

119. Plaintiffs only assert conclusory allegations that the CSL Defendants solicited, enticed, and induced students to attend CSL. (*See* Third Am. Compl. ¶¶ 6, 20, 425, 428.) There is no factual basis to support an unjust enrichment claim.

120. While Plaintiffs now question the sufficiency of their legal education, they have not alleged that they received no legal education. Accordingly, Plaintiffs' claims for unjust enrichment must be dismissed.

## G. The Court Defers Ruling on Plaintiffs' Claims for Unfair or Deceptive Trade Practices.

121. Plaintiffs contend that the CSL Defendants' "representations that its curriculum, attrition rates, bar passage rates, and admissions process were in compliance with ABA standards [were] unfair and deceptive." (Third Am. Compl. ¶ 394.) Thus, Plaintiffs' unfair or deceptive trade practices claims simply restate their fraud claims.

122. Accordingly, the Court defers ruling on whether Plaintiffs have sufficiently stated a claim for unfair or deceptive trade practices until Plaintiffs amend their complaints.

**H.** **The Court Will Not, at Present, Dismiss Claims by Plaintiffs Who Did Not Attend CSL on or After February 3, 2016.**

123.    The CSL Defendants contend that twenty-seven[5] Plaintiffs' claims should be dismissed because those Plaintiffs were not students on or after February 3, 2016, when the ABA first indicated that CSL was not in compliance with its Standards.  (*See* Defs.' Mem. Supp. Mot. Dismiss 16.)

124.    Plaintiffs' claims are based, in part, on events prior to February 3, 2016. (*See, e.g.*, Third Am. Compl. ¶ 377.)  While the CSL Defendants may ultimately prevail on a defense that those twenty-seven Plaintiffs did not rely on, or were not damaged by, any misrepresentations, it is not proper to dismiss their claims at this time.

**I.** **Punitive Damages Are Not A Separate Cause of Action.**

125.    "It is well-established that '[p]unitive damages do not and cannot exist as an independent cause of action,' meaning '[i]f the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all.'" *Loftin v. QA Invs., LLC*, No. 03 CVS 16882, 2018 NCBC LEXIS 11, at \*46 (N.C. Super. Ct. Feb. 1, 2018) (quoting *Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474 (1991)).  To the extent Plaintiffs attempt to state an independent cause of action for punitive damages, it is dismissed.  But, it is premature to determine whether Plaintiffs will ultimately be allowed to recover punitive damages as a remedy.

---

[5] This number only refers to Plaintiffs in the Actions at issue in this Order & Opinion.

# VI. CONCLUSION

126. For the foregoing reasons the Court hereby ORDERS as follows:

   a. The CSL Defendants' Motion is GRANTED as to Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith, constructive fraud, unjust enrichment and punitive damages, and those claims are DISMISSED WITH PREJUDICE;

   b. The CSL Defendants' Motion is DENIED, at this time, as to Plaintiffs' claims for fraud, intentional misrepresentation, negligent misrepresentation, and unfair or deceptive trade practices;

   c. Plaintiffs are permitted to amend their claims for fraud, intentional misrepresentation, negligent misrepresentation, and unfair or deceptive trade practices consistent with this Order & Opinion. The Court preserves the CSL Defendants' right to challenge the amended complaints under Rule 9(b).

   d. Plaintiffs have thirty days to file a consolidated amended complaint that complies with Rule 9(b).


   SO ORDERED, this the 20th day of April, 2018.


                              /s/ James L. Gale
                              _____
                              James L. Gale
                              Chief Business Court Judge